UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MATTHEW LOLLIS,<br><br>Petitioner,<br><br>v.<br><br>JOHN SUTTON, et al.,<br><br>Respondents. | No. 1:18-cv-00843-DAD-SKO (HC)<br><br>**FINDINGS AND RECOMMENDATION THAT THE COURT DENY PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**FINDINGS AND RECOMMENDATION THAT THE COURT DENY MOTION FOR EVIDENTIARY HEARING**<br><br>**(Doc. 1, 7)** |

Petitioner, William Matthew Lollis, is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner presents four grounds for habeas relief: (1) judicial bias; (2) the trial court improperly failed to strike a previous felony conviction; (3) ineffective assistance of counsel; and (4) cumulative error. The Court referred the matter to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304. Having reviewed the record and applicable law, the undersigned recommends that the Court deny habeas relief.

1

Also before the Court is Petitioner's motion for an evidentiary hearing, which the undersigned recommends denying.

I. **Procedural and Factual Background[1]**

On March 17, 2013, at 9:55 p.m., Feness Flores ("Flores") called 911 after receiving threatening voicemails from Petitioner, her boyfriend. Petitioner stated he was going to kill Flores, her children, and the father of her children.

An emergency protective order was issued against Petitioner. When officers tried to serve the emergency protective order on Petitioner, he refused to leave his house and threatened to kill the officers. Detective David Wilkin ("Wilkin") went to the back of the house in an attempt to apprehend Petitioner. Wilkin used his baton to move curtains blocking a broken window; Petitioner grabbed the baton and pulled it. Wilkin was cut on shards of glass in the window. Eventually, officers took Petitioner into custody and the protective order was served on him.

While in jail awaiting trial, Petitioner repeatedly called Flores. During the phone calls, Petitioner discouraged Flores from assisting in his prosecution. Petitioner asked Flores not to press charges, stated he was a vengeful person, told Flores to stay away from the courtroom, and instructed Flores to write a letter stating she had fabricated her accusations against him.

Petitioner was convicted of making criminal threats (Cal. Penal Code § 422); resisting an executive officer (Cal. Penal Code § 69); 19 counts of attempting to dissuade a witness (Cal. Penal Code § 136.1(b)(2)); and attempting to dissuade a witness by threat of force (Cal. Penal Code § 136.1(c)(1)). In a bifurcated proceeding, the court found true that Petitioner had a prior serious felony conviction and had served a prior prison term. On September 24, 2013, Petitioner was sentenced to a total prison term of 92 years.

---

[1] The factual background, taken from the opinion of the California Court of Appeal, Fifth Appellate District, *People v. Lollis*, F068129, 2015 WL 5725103 (Cal. Ct. App. Sept. 30, 2015), is presumed to be correct. 28 U.S.C. § 2254(e)(1).

2

Petitioner filed his petition with this Court on June 20, 2018. Respondent filed an answer on October 26, 2018, and Petitioner filed a traverse on December 17, 2018.

## II. Standard of Review

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000). On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997). Under the statutory terms, the petition in this case is governed by AEDPA's provisions because it was filed April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring). Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings. *Id.* Under AEDPA, a petitioner can obtain habeas corpus relief only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

3

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71. In doing so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision. *Id.* The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72. The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). The petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.

Petitioner raised all four of the claims he raises in this petition for the first time in a petition for writ of habeas corpus filed in the California Supreme Court. The Court summarily denied the petition. Because Petitioner raised these claims for the first time in his state habeas petition, which was denied without a written opinion, there is no reasoned state court opinion for the Court to

review. Consequently, this Court must "perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable." *Haney v. Adams*, 641 F.3d 1168, 1171 (9th Cir. 2011) (internal citations omitted).

Petitioner must show that "there was no reasonable basis" for the California Supreme Court's ruling. *Id*. (quoting *Cullen v. Pinholster*, 563 U.S. 170, 188 (2011) (internal quotation marks omitted)). "A habeas court must determine what arguments or theories could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court." *Id*. (internal quotation marks omitted).

### III. The State Court Did Not Err in Denying Petitioner's Judicial Bias Claim

In his first ground for habeas relief, Petitioner alleges that the trial judge was biased against him and violated his constitutional rights by failing to recuse herself. (Doc. 1 at 36-7.) Respondent counters that that the California Supreme Court reasonably rejected Petitioner's claim as the trial judge was not required to recuse herself. (Doc. 24 at 7-8.)

#### A. Standard of Review

"'The Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard,' for a judicial bias claim." *Hurles v. Ryan*, 752 F.3d 768, 788 (2014) (quoting *Bracy v. Gramley*, 520 U.S. 899, 904 (1997)). "While most claims of judicial bias are resolved by common law, statute, or the professional standards of the bench and bar, the floor established by the Due Process Clause clearly requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of the particular case." *Hurles*, 752 F.3d at 788 (internal quotations omitted). "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955).

Recusal is required in those circumstances "in which experience teaches that the probability of actual bias on the part of the judge . . . is too high to be constitutionally tolerable." *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 877 (2009) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)) (internal quotation marks omitted). A court does not evaluate whether the actual judge harbored subjective bias but whether "the average judge in her position was likely to be neutral or whether there existed an unconstitutional potential for bias." *Hurles*, 752 F.3d at 789.

Pursuant to Supreme Court precedent, there are three circumstances in which "an appearance of bias – as opposed to evidence of actual bias – necessitates recusal." *Crater v. Galaza*, 491 F.3d 1119, 1131 (9th Cir. 2007). First, recusal is required for a judge who "has a direct, personal, substantial pecuniary interest in reaching a conclusion against [one of the litigants]." *Id*. (quoting *Tumey v. Ohio*, 273 U.S. 510, 523 (1927) (internal quotation marks omitted). Second, recusal is required if a judge "becomes 'embroiled in a running, bitter controversy" with one of the litigants." *Id*. (quoting *Mayberry v. Pennsylvania*, 400 U.S. 455 465 (1971). Third, recusal is required if the judge "acts as 'part of the accusatory process.'" *Id*. (*In re Murchison*, 349 U.S. 133, 137 (1955).

**B. The State Court Did Not Err in Rejecting Petitioner's Judicial Bias Claim**

Petitioner alleges there was evidence of "bias and collusion on the part of the judge and the district attorney's office." (Doc. 1 at 37.) Petitioner claims the judge was biased against him because Petitioner filed complaints about the judge with the Commission on Judicial performance and with the California Bar Association. *Id*. In addition, Petitioner states the judge was biased because she is married to an attorney in the local district attorney's office. *Id*.

On July 15, 2013, Petitioner filed a complaint with the Commission on Judicial Performance before his sentencing. *Id*. at 50. His complaint with the California Bar Association was filed after sentencing, on October 8, 2014. *Id*. at 51. Petitioner included the responses rejecting his complaints

with his petition, but did not include the actual complaints. Nonetheless, filing a complaint against a judge is not automatically grounds for recusal. *United States v. Studley*, 783 F.2d 934, 939-40 (9th Cir. 1986).

Petitioner alleges that after he filed the complaint against the judge, "every motion, objection, or request presented by the defense was denied. Furthermore, [P]etitioner was sentenced to a disproportionate sentence of (92) years for threats." (Doc. 1 at 37.) A judge's conduct at trial may be "characterized as 'bias[ed]' or 'prejudice[ed]'" only if "it is so extreme as to display [a] clear inability to render fair judgment" or "display[s] a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 551, 555 (1994) (internal citations omitted). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Id*. at 555 (citing *United States v. Grinnell Corp*, 384 U.S. 563, 583 (1966). Petitioner's allegations of judicial bias based on the judge's legal rulings are insufficient to overcome the presumption of judicial integrity.

Petitioner additionally contends the judge was biased against him because she is married to a deputy in the district attorney's office. (Doc. 1 at 36.) However, having a family member in the local district attorney's office does not fall within one of three circumstances in which "an appearance of bias – as opposed to evidence of actual bias – necessitates recusal." *Crater*, 491 F.3d at 1131. Petitioner has not presented, and the undersigned has not found, any Supreme Court law that holds a judge must recuse herself based on the judge's family relationship with a district attorney's office. The California Supreme Court's denial of this claim was not contrary to, or based on an unreasonable application of, clearly established federal law or an unreasonable determination of the facts. Petitioner has not presented facts establishing unconstitutional bias; consequently, the undersigned recommends denying his judicial bias claim.

**IV.     Petitioner's Prior Strike Claim Is Not Cognizable on Federal Habeas Review**

In his second ground for habeas relief, Petitioner alleges the trial court should have dismissed his prior strike pursuant to California law under *Romero*, *People v. Superior Court (Romero)*, 13 Cal.4th 497 (1996). (Doc. 1 at 37-39.) California courts may dismiss a defendant's prior "strike" conviction for purposes of sentencing under California's Three Strikes Law; these dismissals are referred to as "*Romero*" motions. *Id*. Respondent counters that this claim is a matter of state sentencing law that is beyond the scope of federal habeas relief. (Doc. 24 at 9.)

Petitioners seeking federal habeas relief must allege that they are in custody "pursuant to the judgment of a State court . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citations omitted). "[E]rrors of state law do not concern us unless they rise to the level of a constitutional violation." *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1400 (9th Cir. 1989).

Here, Petitioner contends the trial court erred in failing to exercise its discretion to strike his prior conviction. Petitioner does not allege a violation of his Constitutional rights, but instead alleges an error in state law. Claims alleging a misapplication of state sentencing laws involve questions of state law that are not cognizable on federal habeas review. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). For the forgoing reasons, the undersigned recommends denying this claim.

**V.     The State Court Did Not Err in Denying Petitioner's Ineffective Assistance of Counsel Claims**

In his third claim for habeas relief, Petitioner alleges thirteen ineffective assistance of counsel grounds. The Court will address each claim in turn.

**A. Standard of Review**

The purpose of the Sixth Amendment right to counsel is to ensure that the defendant receives a fair trial. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "[T]he right to counsel

is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his trial counsel's performance "fell below an objective standard of reasonableness" at the time of trial and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. The *Strickland* test requires Petitioner to establish two elements: (1) his attorney's representation was deficient; and (2) prejudice as a result of such deficient performance. Both elements are mixed questions of law and fact. *Id.* at 698.

These elements need not be considered in order. *Id.* at 697. "The object of an ineffectiveness claim is not to grade counsel's performance." *Id.* If a court can resolve an ineffectiveness claim by finding a lack of prejudice, it need not consider whether counsel's performance was deficient. *Id.*

Establishing a state court's application of *Strickland* was unreasonable under § 2254 is difficult because the standards under *Strickland* and § 2254 are both "highly deferential." *Harrington v. Richter*, 562 U.S. 86, 106 (2011) (quoting *Strickland*, 466 U.S. at 689). "[W]hen the two apply in tandem, review is 'doubly' so." *Id.* (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). In the habeas context, under § 2254, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

## B. Ineffective Assistance of Counsel Claims

### 1. Failure to Seek Recusal

Petitioner claims trial counsel was ineffective for failing to "challenge the trial judge[']s marriage to a Fresno county district attorney, which influenced bias," and failing to request the recusal of the trial judge.[2] (Doc. 1 at 39-41, 46-47). Petitioner also alleges counsel was ineffective, because he untimely sought for the judge to recuse herself.

Even if Petitioner could show counsel was deficient in not timely seeking recusal of the judge, Petitioner cannot show that he was prejudiced by counsel's decision. The undersigned has already determined that the judge's marriage to a local district attorney did not bias Petitioner and the judge did not need to recuse herself. Therefore, Petitioner has not shown that his counsel's failure to seek recusal was so unreasonable as to constitute ineffective assistance under *Strickland*.

### 2. Failure to Make Suppression Motion

Petitioner contends trial counsel was ineffective for failing to make a suppression motion based on an illegal search of Petitioner's mother's house and the seizure of property at the house.[3] (Doc. 1 at 41.) Petitioner alleges "pictures of items brought up in trial of an airsoft gun and knife . . . were obtained through an illegal search of [P]etitioner's mother's residence. Specifically, law enforcement agents gained entry without a warrant." *Id*.

The United States Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). The relevant inquiry for Fourth Amendment claims is "whether petitioner had the opportunity to litigate

---

[2] Petitioner labeled these claims 3.A and 3.L in the petition.
[3] Petitioner labeled this claim 3.B in the petition.

10

his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (1996) (internal citations omitted).

Here, although trial counsel did not file a suppression motion, there is no evidence that counsel could not litigate the claim.

Further, although Petitioner now claims the search of his house was illegal, he testified at trial that the police obtained a search warrant before entering his house:

| | |
|---|---|
| Petitioner: | They had to get a search warrant, so they called the judge and got a search warrant. Then it took hours – or three, four hours to get the search warrant. |
| Defense Counsel: | All right. So then, that's when they came in? |
| Petitioner: | And that's when they came in. |

(Lodged Doc. 9 at 201.)

Based on Petitioner's testimony, officers legally entered his house by obtaining a search warrant. Because the search was legal, there was no basis for Petitioner's attorney to object at trial. Therefore, the attorney's performance was not outside the range of professionally competent assistance. *See Boag v. Raines*, 769 F.3d 1341, 1344 (9th Cir. 1985) ("Failure to raise a meritless argument does not constitute ineffective assistance of counsel.") (citing *Cooper v. Fitzharris*, 551 F.2d 1162, 1166 (9th Cir. 1977)); *see also Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("[T]he failure to take a futile action can never be deficient performance."). For these reasons, the state court's denial of Petitioner's ineffective assistance of counsel claims was reasonable, and the undersigned recommends denying the claim.

### 3. Failure to Challenge Violation of Speedy Trial Rights

Petitioner alleges trial counsel was ineffective for failing to challenge the violation of his right to a speedy trial.[4] (Doc. 1 at 41.)

---

[4] Petitioner labeled this claim 3.C in the petition.

11

"The Sixth Amendment guarantees that in all criminal prosecutions, the accused shall enjoy the right to a speedy trial." *Doggett v. United States*, 505 U.S. 674, 651 (1992). States have statutorily established deadlines for commencing trial. In California, the speedy-trial deadline is 60 days from arraignment. Cal. Penal Code § 1382.

Here, Petitioner was arraigned in June 2010, and "timed out" pursuant to California's 60-day deadline on August 6, 2013. On August 6, 2013, there were no trial judges available to preside over his trial until the next day. The court found good cause to excuse the one-day delay and set trial for August 7, 2013. (Lodged Doc. 7 at 307-8.) Petitioner claims his counsel was ineffective for failing to challenge the violation of his speedy trial rights; however, counsel objected to the delay by moving to dismiss the case based on the delay. *Id*. at 307. Although the court denied counsel's motion to dismiss, counsel was not deficient as he raised the issue before the court.

Further, even if counsel was deficient, Petitioner has not shown that he was prejudiced by the one-day delay in starting trial. Therefore, the state court's denial of Petitioner's claim was reasonable and the undersigned recommends denying the claim.

### 4. **Mental Health Arguments**

Petitioner contends counsel was ineffective for failing to take action regarding Petitioner's alleged mental condition.[5] (Doc. 1 at 41-42, 45-46.) Specifically, Petitioner alleges counsel failed "to challenge the court[']s bias at resentencing caused by overlooking [Petitioner's] psychological/mental condition exhibited at initial proceeding," and appellate counsel failed to "challenge the fact that trial counsel had not sought assessment of [Petitioner]'s mental disorder diagnostic for sentencing." *Id*.

As to his first claim, Petitioner asserts the trial court was biased against him based on Petitioner's outbursts at sentencing and the court overlooked Petitioner's mental condition. *Id*. at

---
[5] Petitioner labeled these claims 3.D and 3.K in the petition.

12

41. Petitioner does not explain what action his counsel should have taken, how his counsel was deficient, or how he was prejudiced by his counsel's actions. Because Petitioner failed to demonstrate either element in the *Strickland* test, the undersigned recommends denying his claim.

In his second claim, Petitioner alleges appellate counsel was ineffective for not challenging trial counsel's failure to assess Petitioner's mental capacity. *Id*. at 45-46. Petitioner asks the Court to review the results of an attached mental health assessment, stating that "[c]ounsel's failure to seek a mental health evaluation was clearly prejudicial, as mental health problems are mitigating factors." *Id*. at 46.

The mental health assessment Petitioner attached to his petition states that his "mental health history is unremarkable. He has no history of psychiatric hospitalizations or outpatient treatments for mental health. He was also not a participant in the mental health services while incarcerated." *Id*. at 65. It further describes his "[t]hought processes" as "clear, relevant, goal directed and without delusional content." *Id*. Considering the mental health assessment performed on Petitioner assessed his mental health history as "unremarkable," Petitioner has not presented evidence that counsel needed to investigate Petitioner's mental health. "When a reasonable investigation does not turn up signs of additional, reasonably available mitigating evidence, competent counsel may make the judgment not to pursue a line of inquiry further." *Crittenden v. Ayers*, 624 F.3d 943, 965 (9th Cir. 2010) (citing *Bobby v. Van Hook*, 558, U.S. 4, 11 (2009)).

Petitioner has not shown counsel was ineffective based on the evidence presented to the Court; consequently, the undersigned recommends denying his claim.

### 5. **Failure to Challenge the Admittance of Evidence**

Petitioner contends trial counsel was ineffective for failing to object to the introduction of evidence at trial.[6] (Doc. 1 at 42-44.)

---

[6] Petitioner labeled these claims 3.E, 3.G, 3.H, and 3.I in the petition.

13

First, Petitioner asserts trial counsel failed to object to evidence of phone calls Petitioner made to the victim because the victim did not ever audibly respond during the calls. *Id*. at 42. However, trial counsel moved to dismiss the charges of attempting to dissuade a witness on the basis that there was no proof the victim herself received the telephone calls from Petitioner. (Lodged Docs. 1 at 193-95, 8 at 620.)

Second, Petitioner contends trial counsel failed to object to the admittance of a YouTube video that showed Petitioner making gang signs. (Doc. 1 at 43.) Trial counsel did object to the admission of the video, and the trial court excluded the video and any reference to it at trial. (Lodged Docs. 1 at 188, 8 at 643-44.) The trial court held that the video was "not relevant to any of the charges and w[ould] only deprive [Petitioner] of his right to a fair trial." (Lodged Doc. 8 at 644.)

Third, Petitioner claims trial counsel failed to object to evidence that, during a separate incident, a gun was found in Petitioner's car. (Doc. 1 at 43.) Trial counsel did object to this evidence, and the trial court excluded evidence of the gun. (Lodged Docs. 1 at 187-88, 8 at 640-43.)

Fourth, Petitioner alleges trial counsel was ineffective for failing to object to the prosecutor's introduction of an expert witness on Battered Women's Syndrome. (Doc. 1 at 44.) Before trial, counsel moved to exclude expert testimony on "intimate partner battering syndrome." (Lodged Docs. 1 at 183-86, 8 at 634-37.)

Trial counsel took the actions, moving to exclude evidence, Petitioner now contends trial counsel was ineffective for failing to take. Consequently, it was objectively reasonable for the state court to reject Petitioner's ineffective assistance of counsel claims. For these reasons, the undersigned recommends denying Petitioner's claims.

### 6. PowerPoint Presentation

Petitioner contends trial counsel was ineffective for failing to object to the "prosecution['s] introduction of inadmissible evidence in [a] PowerPoint [presentation]."[7] (Doc. 1 at 43.) Petitioner claims "airsoft gun/knife" photos that were not admitted into evidence, or disclosed in discovery, were shown to the jury in a PowerPoint presentation.

The record shows several photographs of an airsoft gun and knives were admitted into evidence and shown to the jury; however, all the photographs were properly admitted into evidence. (Lodged Doc. 1 at 235.) Petitioner does not cite the record to establish that unadmitted photographs were shown to the jury, or that a PowerPoint presentation was shown to the jury. Petitioner has not established that the jury was shown improper evidence; therefore, the undersigned recommends denying his ineffective assistance of counsel claim.

### 7. Lost Evidence

Petitioner alleges trial counsel lost exculpatory evidence and on appeal, appellate counsel was ineffective for not arguing trial counsel was ineffective for losing the evidence.[8] (Doc. 1 at 45-46.) Petitioner claims trial counsel lost a letter that the victim, Flores, sent to Petitioner, which "contained an admission from [Flores] that the only reason she put [P]etitioner in jail was because he was on drugs and would be a better person if he didn't get high." *Id*.

It is not clear from the record before the Court whether trial counsel lost evidence. The evidence was not produced at trial and Respondent did not include an affidavit from trial or appellate counsel to dispute the ineffective assistance of counsel claims.

However, even assuming trial counsel rendered deficient performance, Petitioner has not shown prejudice. Petitioner alleges the letter would have been evidence "which presented a clear

---

[7] Petitioner labeled this claim 3.F. in the petition.
[8] Petitioner labels this claim 3.J in the petition.

motive of why the alleged victim would file false charges on [P]etitioner. This evidence was crucial to [P]etitioner's defensive strategy of actual innocence to the charges." *Id*. at 46. Petitioner's speculation as to what the letter would show is insufficient to demonstrate prejudice. *See Santoyo v. Seibel*, No. 2:14-CV-0771 DBP, 2016 WL 5847012, at *8 (E.D. Cal. Oct. 6, 2016) (citing *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir. 2001)). "A prejudice inquiry 'must focus on whether the result would have been different in light of the evidence that would have been presented to the jury had [the petitioner's] counsel not been deficient.'" *Id*. (quoting *Boyde v. Brown*, 404 F.3d 1159, 1179 (9th Cir. 2005)). Here, there is no evidence to support a determination that the result of the case would have been different besides Petitioner's speculation.

Even if a letter from the victim existed, the victim's motive for wanting Petitioner in jail would not be a defense to the charges. Petitioner left threatening voicemails on the victim's voicemail, refused to surrender to police, and while in jail awaiting trial, continued to call the victim in violation of a protective order. Based on this evidence, a letter sent by the victim to Petitioner stating she wanted Petitioner in jail, would not provide a defense to the charges of making criminal threats, resisting an executive officer, and attempting to dissuade a witness. For these reasons, the undersigned recommends denying the claim.

### 8. Ineffective Assistance of Appellate Counsel

In his last ineffective assistance of counsel claim, Petitioner alleges appellate counsel was ineffective for failing to allege ineffective assistance of trial counsel on appeal, based on the claims Petitioner presented in his petition for writ of habeas corpus.[9] (Doc. 1 at 47.)

A defendant's right to appellate representation does not include a right to present frivolous arguments to the court. *McCoy v. Court of Appeals of Wis., Dist. 1*, 486 U.S. 429, 436 (1988). An attorney is "under an ethical obligation to refuse to prosecute a frivolous appeal." *Id.* Further, no

---
[9] Petitioner labeled this claim 3.M in his petition.

16

U.S. Supreme Court decision holds a "defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Even if Petitioner could show appellate counsel's representation was deficient, he cannot establish the prejudice element of the *Strickland* test. Petitioner raised his ineffective assistance of counsel claims before the state court, which were rejected. Because Petitioner would not have prevailed on these claims even if appellate counsel had raised them, Petitioner cannot show that he was prejudiced by appellate counsel's decision not to raise the claims. Accordingly, the undersigned recommends denying Petitioner's claims.

## VI. **Cumulative Error**

In his fourth ground for relief, Petitioner contends he was denied due process based on the cumulative effect of the errors at trial.

Under the cumulative error doctrine, the combined effect of multiple errors at trial can give rise to a due process violation, if the errors rendered the trial fundamentally unfair, even if each error considered individually would not warrant relief. *See Parle v. Runnels*, 505 F.3d 922, 928 (9th Cir. 2007). "[T]he fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense far less persuasive" and thus "had a substantial and injurious effect or influence on the jury's verdict." *Id.* (internal citation and quotation marks omitted). The Ninth Circuit has "granted habeas relief under the cumulative effects doctrine when there is a 'unique symmetry' of otherwise harmless errors, such that they amplify each other in relation to a key contested issue in the case." *Ybarra v. McDaniel*, 656 F.3d 984, 1001 (9th Cir. 2011) (citing *Parle*, 505 F.3d at 927).

The Court has addressed each of the errors raised by Petitioner in his petition for writ of habeas corpus and found no error. Therefore, "[b]ecause we conclude that no error of constitutional

magnitude occurred, no cumulative prejudice is possible." *Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011). Accordingly, the undersigned recommends denying Petitioner's claim of cumulative error.

## VII. <u>Evidentiary Hearing</u>

Petitioner requests the Court hold an evidentiary hearing so that a witness can testify regarding the judicial bias claim. (Doc. 7.) In habeas proceedings, "an evidentiary hearing is not required on issues that can be resolved by reference to the state court record." *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998). "It is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise." *Id.* at 1176. Here, Petitioner's claim can be resolved by reference to the state court record. Accordingly, the Court recommends denying Petitioner's request for an evidentiary hearing.

## VIII. <u>Certificate of Appealability</u>

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Accordingly, the Court recommends declining to issue a certificate of appealability.

## IX. **Recommendation and Conclusion**

Based on the foregoing, the undersigned recommends that the Court dismiss the petition for writ of habeas corpus with prejudice, decline to issue a certificate of appealability, and decline to hold an evidentiary hearing.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C □ 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, either party may file written

objections with the Court. The document should be captioned ☐Objections to Magistrate Judge's Findings and Recommendations. Replies to the objections, if any, shall be served and filed within **fourteen (14) days** after service of the objections. The parties are advised that failure to file objections within the specified time may constitute waiver of the right to appeal the District Court's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 23, 2019**　　　　　　　　　/s/ *Sheila K. Oberto*
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE